Good morning, Your Honors. If it pleases the Court, I'm Thomas Lapin, appearing on behalf of the Petitioner Eduardo Solis-Espinoza. First, as pointed out in our brief, it remains our contention that Mr. Solis-Espinoza was born during a lawful marriage between a U.S. citizen mother and a non-citizen father, and therefore is a legitimate child. In light of this legitimacy, I submit that 8 U.S.C. section 1401, parangee, INA section 301, parangee, is applicable. And this Court's ruling on scales v. INS applies. CHIEF JUSTICE BREYER Okay. Let me stop you with the premise that the Petitioner was born as a legitimate child. If that moves to the definition of legitimate, how do we determine both what the definition is or what the legal standard is, and then apply it to this individual who was literally born of a woman who's not part of the couple you identified? ASHCROFT Well, as this Court pointed out in scales, in the scales case, the Respondent's or the Petitioner's father was a U.S. serviceman who met a woman in the Philippines who was already pregnant. So obviously there's another person in the picture there as well. And his child was born of other parents than the parent that derived his or he derived his citizenship from. CHIEF JUSTICE BREYER The Petitioner in that case never gave up the possibility that his natural father was the American citizen, although it seemed pretty implausible. ASHCROFT Well, it seemed pretty implausible because of the dates of birth, the dates of marriage, the dates of meeting, and also the fact that the father in scales actually signed a petition or an affidavit of non-paternity. So I think this Court ignored that and said it's not important at this point. The point is, was he born during a marriage? And he was. What's important in this case is that the Petitioner's mother, the U.S. citizen, her name appears on his birth certificate. He's legitimated by her. As she testified during the proceedings, she raised him as her own son. And some 37 years later, she's still behind him. She's in her 80s, and he's still her son. And she always has treated him that way, as the Court in scales pointed out, Mr. Scales had done for his son. But I'd like to take a moment to address the Government's contention, Your Honor, that the Petitioner is illegitimate and therefore 8 U.S.C. 1409, not 1401, should be drawn. And it's further – and their further contention that Section 1409 requires a blood relationship between the U.S. citizen mother and the child for citizenship to pass. In support of this contention, the Government relies on the VA's previous decision overturning the IJ who agreed with the Petitioner and actually terminated the proceedings and the Miller v. Albright case from the United States Supreme Court. It is of note that the BIA also applied and relied on Miller v. Albright. I would submit that the Government's reliance on Miller v. Albright is misplaced. Furthermore, the Government's contention that 8 U.S.C. 1409 requires a blood relationship between the U.S. citizen and the parent – a parent and the illegitimate child is incorrect. In the Miller case, the alien was the illegitimate child of a U.S. citizen father and a non-citizen mother. Miller v. Alien raised an equal protection argument under the Fifth Amendment before the Supreme Court because 8 U.S.C. 1409 does require a blood relationship, among many other requirements, between a father and an illegitimate child. It does not require that same blood relationship between the mother and the child, which is what the – what the Petitioner in the Miller case was trying to prove. And in that case, the U.S. Supreme Court found that the differentiation did not violate the Fifth Amendment. If we assume for argument's sake that the Government's position is correct that Mr. Solis-Espinosa is the illegitimate child of a U.S. citizen mother, then Section 1409, parent C, applies. And since his birth is after 1952, the only requirement is that the U.S. citizen mother has resided in the U.S. for one year prior to the child's birth. A blood relationship is specifically not required, as it is for a father, as well as the other four points that are required for a father. It is clear that the Respondent or the Petitioner has met the burden to prove that his mother was living in the United States for at least one year. He's already met, as the Court found below, the higher burden under 1401 that his mother lived here for 10 years prior to his birth, five of which were after she had taken the age of 14. But as I stated at the outset … Kennedy, you're identifying here as the mother whom? Estela – Estela Espinosa Cruz. Estela Cruz. There was some miscommunication about the name. Her original birth certificate were different. The mother is the U.S. citizen here. She's the U.S. citizen. It was proven she's a U.S. citizen. There's no contention otherwise. Well, then it really goes back to the same concern I had before. What is it that establishes she's the mother in any legal sense? We know she's not biologically. We know that, just like in scales. She's not biological. She legitimated him. She went down to Mexico. Her name appears on the birth certificate. Well, but we know that's not true either. Under California law, under any law, does she have legal standing as the mother of the child? She took him as her child. The Mexican government acknowledged her as the mother. But even furthermore, she brought him back to the United States, and through her own testimony, she raised him as her own child, just like scales did. Scales – the parents were married, just like in this case. His parents were married. His mother, the U.S. citizen, and his biological father. In scales, it was just the opposite. It was the father who wasn't the biological father. And scales, in the state of Washington, raised the boy to be his own. This court found that very important, that he had legitimated that child under the state of Washington. The same was in California. But they said it wasn't the Washington law or the Washington presumption, that that was all not the issue in the case, that he was born into the marriage. Scales was born into the marriage because one of the parents was a citizen. And there was a marriage with an American citizen. There's a marriage here as well. And one of the parents of the marriage – And on what basis do you say the child was born into that marriage? Because he was born to a woman that was not part of that marriage. That's correct. That's a differentiation. But the mother – Well, I don't understand the differentiation. Scales was also born of parents who were not married in the marriage. That's correct. Two people who were not in a marital relationship. I wasn't. Just a minute. I apologize. Two people in a marital relationship became parents of a child. This court said that child was born into the marriage, a different – entirely different relationship, simply because the husband was in a marital relationship or the wife was in a marital relationship. What made that into the marriage any more than this is into the marriage? Well, I would say the fact that her name appears on the birth certificate. She accepted the child. No, I ask why in Scales is the child born into the marriage any more than this child is. I think it's the same. I think that the child in Scales was not Mr. Scales' child. But he was married to the mother. In this situation, the father is the biological father. He's born of one of these people, and they're married. A U.S. citizen is married to a man who bore a child. The same as Scales is married to a woman who bore a child. The marriage existed at the time of the birth. And also, furthermore, the child was legitimated, just like in Scales, by the mother taking him as her own son through her own testimony, raising him as her son, and also the name appearing on the birth certificate and the fact that the governor of Mexico and the governor of California recognized her as a mother. You have about two and a half minutes. I'd like to ask you a question from a different aspect. It seems to me that the law is fundamentally ambiguous, and we're told by the Supreme Court that under Chevron, we should defer to the board when it interprets an ambiguous law. So now the board says born, in this case, does not mean born of a woman who is not the actual mother. Why don't we have to defer to the board? Because the board was relying on Miller v. Albright, where the court differentiated a different statute. Section 1409 requires the blood relationship from a father of an illegitimate child. It doesn't require the mother. The question Judge Noonan asked you is are we required to defer to the board's interpretation of the statute? Not where it's – where the board's decision is erroneous, as it is here, and where it is clear that no – Could we defer in Scales to the board? No, you could not, Your Honor. Did the board reach an opposite interpretation of the statute there? They did, Your Honor. You're correct. Do you know why we didn't defer to the board in Scales? As I read it, Your Honor, because they were incorrect. Or because we don't defer to legal questions relating to citizenship? Okay. Do you – your position is that the board made a legal error, but supposedly the counterargument is this law is pretty ambiguous, and the board was free to choose its own interpretation? But it wasn't ambiguous because, as Miller Court pointed out, Congress said if we want men who father children out of wedlock, presumably because we send a lot of, you know, men overseas to fight in conflicts, to have to legitimate these children, show a blood relationship, promise to sponsor that child or to pay for that child until that child turns 18, and do all this before the child is 18. On the converse, it doesn't require any of that from the mother. And the whole argument in Miller v. Albright was that it was an equal protection argument, and the U.S. What? Equal protection argument. They said it wasn't fair because the Petitioner in that one, in that case, was a child of a father who was a U.S. citizen, and she couldn't prove all the legitimation points. And she said it wasn't fair because if this was my mother, I wouldn't have to prove any of these things. And the Court said, I'm sorry, it does not violate the Fifth Amendment. So in this case, the BIA actually incorrectly found that a blood relationship was required because a blood relationship was only required for a father of an illegitimate child, not of a mother. And that was their sole basis for overturning the IJA's decision, and that's why I submit that it was incorrect. If I could reserve the rest of my time around it, please. All right. Thank you. May it please the Court. Joan Smiley here for the Attorney General. As the record reflects, Petitioner is an aggravated felon. He was convicted of ---- Well, what does that have to do with this issue? We're talking about whether the scales, controls, whether what the relationship between the mother and the father have to be. Let's talk about the issue. The issue in the case is whether the Petitioner acquired derivative U.S. citizenship where his birth mother and his birth father are non-U.S. citizens. Like scales. No. In scales, the father was a U.S. citizen serviceman. Arguably not his birth father. That was not proven conclusively. It was assumed but not proven. Well, it was assumed for purposes of our decision that he was not, that he was, there was no citizen birth parent in scales. The difference between scales in this case, Judge Reinhart, the scales decision should not apply because in scales there was a presumption of legitimacy. And we said that presumption did not apply. We were not going to apply the presumption that was overcome by the fact that the American citizen declared he was not the father. And it was clear he wasn't the father. But the difference, as I was about to say, is that the child was born during a marriage here. This child born during a marriage? Not between his mother and father. Well, neither was scales. There was the same thing. In each case, there's a parent who's married to someone else. But in scales, the critical difference is that the child was born at the time that the parents were married to each other. Which parents? Not the birth parents. Mr. Scales and his wife. Now, wait a minute. What's the difference between the two marriages? There's only one difference. The difference is in one case it's the mother and in one case it's the father. There's no other difference. The difference in scales is the child was not born out of wedlock. He was married. Why? Let me pursue this question because this is an absurd line for you to take. The father in scales had to file some kind of petition to bring in this child into the country. The father did not acknowledge that he was the father. As far as the parallel goes, they're exactly parallel. The only difference is one's a father and one's a mother. But in each case, there was a legitimate marriage in existence and the child was born to someone else. I mean, you shouldn't just waste your time making a distinction that doesn't exist. For what it's worth, I'll buy your distinction. Okay. We would maintain that here we have a child who was born out of wedlock to two persons who are not married. Well, the other one's not. Scales is not born out of wedlock to two people not married to each other. No. Scales was born to two parents who were married to each other. They were the birth parents. It was the sperm of the birth mother. And it was not clear whether he was. Well, it's not. It may not be clear to you, but it was clear for the purposes of the opinion. In this case, we have two noncitizens. Mr. Solis was married to someone else at the time that he fathered this child petitioner with another woman. But the someone else did claim he was an American citizen. Pardon me? The someone else to whom he was married was a U.S. citizen, and she did claim the status of mother of this child. Clearly not the biological mother. But she did take him into her home, made a family, acted as his mother, raised him as his mother. Can't she be the mother? Not under any law that the petitioner has cited. In fact, the statute that is at issue, 8 U.S.C. 1409, specifically requires a blood relationship. And that is the statute at issue here. Well, was there a blood relationship in Scales? There's a blood relationship between the father and the child. Yes. Here there's no blood relationship. Which father? Which father? The father who declared he's not the father? The man that was married to the woman when she gave birth to him. I don't think you understand the opinion in Scales. Well, I understand it. I think we differ on, you know, how we look at it. I don't like it, and I can understand that. It may not be the most persuasive opinion. It may not be right. But the opinion is what we have to apply here until we go and bank. Well, you said the statute required a blood relationship. What does the statute require? In Section 309 of the Act, 8 U.S.C. 1409, Congress has specifically provided that in order for a child born out of wedlock to require a regular citizenship. But we said in Scales you're born in wedlock. A blood relationship must be established. That's right. That's a different statute. That doesn't apply to people born in wedlock. Now, in Scales we said he was born in wedlock, although the parents were not married to each other. Here he was born out of wedlock. Why? What's the difference between Scales? His parents were not married to each other. Well, neither were Scales' parents married to each other. Yes, they were. At the time he was born, they were married to each other. That's the critical difference. All right. I give up. Here there's no blood relationship between Petitioner and the woman who raised him. We don't dispute that she raised him, but she's not his biological mother. She shared in raising him. Can I just put it succinctly? You are asking us to overrule Scales. We can only do that by an en banc. So you don't understand Scales. You've come here unprepared. You don't understand what the issue is. If you want us to overrule Scales, you can ask us to do that. But so far your argument has advanced the case zero. Do you understand that? Yes, sir. All right. I would point out on page 1164 in Scales the Court specifically provides that if a child is born out of wedlock, then section 309 requires a blood relationship with a United States citizen. Nobody disagrees with that. Nobody disagrees. The issue in this case is whether this child is legitimate, whether this child is born in wedlock, as defined by Scales. Now, I don't know how Scales reached the conclusion that a child born with two biological parents who were not married to each other is legitimate. But they say in Scales that as long as the person is married at the time, the child's legitimate. So, you know, I can understand. They were not married to each other. I know. I understand that. But that's the whole basis of the Scales decision, that even though the parents are not married, the child is born into a marriage if one of the parents is married. Well, no, Your Honor, in Scales they were married to each other. The biological parents? Again, it wasn't clear who the biological father was, but nowhere does the statute provide that. Well, see, if Scales is about a case of two people who were married to each other who had a child, we wouldn't even have needed a case. The statute does not provide that anyone can derive derivative citizenship from a spouse, a parent's spouse, who's not a birth parent. And that's what Mr. Solis is trying to do in this case. The Board's decision was correct. Well, actually, that's exactly what Scales is, because the U.S. citizen was not a birth parent biologically. It was arguably a parent because he was married to the birth mother, biological mother, at the time of birth. Right. And in Scales they relied on a Washington State statute. No, they did not rely on the Washington statute. They said we are not relying on the statute. But they did point out that the statute presumes that the man is the natural father of a child born during a marriage. And none of that is at issue in this case. We would submit — I know, Your Honor, you disagree, but we would submit that Section 309, rather than 301, which was at issue in Scales, would apply in this case, since he was born out of wedlock and there was no blood relationship between he and his father's wife. It's true his father's wife subsequently went to Mexico, picked up the child, brought him back, and has presumably raised him. But that does not equate with being a birth mother. And under the statute, Section 309, it clearly requires a birth relationship, which we do not have here. But if you — the problem is understanding the meaning of legitimate and out-of-wedlock terms that aren't defined in the statute. And in Scales, the court — our court declared that the child was legitimate. Now, it uses a definition of legitimate that squarely contradicts that factual statement, but it says the child is legitimate. And that's the case law that we have to apply. Is there some — well, the factual distinction is obvious. Does biology overrule that? And that's, you know, the question we're stuck with. But we get to your statute only if we accept the proposition that the child here was born out of wedlock. I mean, isn't that really the problem that you're facing? Well, I don't know how the court could find otherwise. How did the court find otherwise in Scales? I don't know how it did either. Well, the policy consideration in Scales was different because they were married to each other. Who was married to each other? You know, if Scales was born of the people who were — if those were the biological parents, then you have no problem at all and there would be no Scales case. Nobody would dispute that if the child — wait a minute. No one would dispute that if the Scales child was born of the two parents, if they were the biological parents, the two people married to each other, we wouldn't have had a case at all in Scales. There'd be no problem, obviously. The reason we had a problem in Scales, the reason we had a case, is because the biological parents were not the two people who were married to each other, only one of them. If the court finds that Section 309 does not apply, then in essence what it means is any lawful permanent resident or illegal alien in the United States who happens to be married to a U.S. citizen can go to another country, father a child, and that child would acquire derivative citizenship. Unless we can define the word legitimate in a more limited fashion, such as in the case of Scales where the father accepted responsibility for the child, not the child as his own, formed a family unit, and arguably those facts exist here too. The mother, although plainly not the biological mother, accepted responsibility for the child, took the child into the family unit. So if we draw a distinction there, we could be consistent with Scales without opening the door to what I understand is your source of concern, that in fact if you define as legitimate any child born of a person who happens to be married at the time, whether or not the spouse has any recognition or anything to do with the child, then the door is wide open. But that isn't presented by this case, because the mother here is one that did take the child in and recognize the child. Presumably. As we pointed out in our brief, there are lots of inconsistencies in the record. So, you know, it is a presumption that she did this. But we did point out the inconsistencies there. I would also point out that Mr. Solis didn't even apply for citizenship until January 29th, 2002. It's not like he tried to identify and legitimize this affiliation until after the notice to appear was issued. You know, a lot of people think they're citizens when they're born of a parent adopted children. It's a real problem. People who are adopted have assumed that they were citizens. And then they find out someday, too late, that they really weren't. But we've taken you way over your time and given you a hard time. So thank you very much for coming. Thank you. Just very briefly, Your Honor. As the I.J. pointed out, or the immigration judge pointed out in the decision when he terminated the case, and as this Court points out, the fact that the U.S. citizen parent here is the mother and not the father is not of import. Section 1401 of 8 U.S.C. simply requires that there be a U.S. citizen parent. It doesn't have to be a father. And at the risk of incurring the Court's wrath, I would just simply like to restate that the government's contention that Section 1409 requires a blood relationship is incorrect. It only requires a blood relationship for a father, not for a mother. That was the whole basis of the claim in Miller v. Albright, the Fifth Amendment equal protection argument, which the Court said. You made that argument at the very end. So you don't have to restate it because your time's up. Thank you. At this point, I would just simply ask the Court to find that the respondent or the Petitioner is a legitimate child of the U.S. citizen mother. She took him in as her own. She raised him as her own. She legitimated him with the birth certificate by raising him, by representing that he was her son, by immigrating him to the United States. The same as in Scales, the fact that she was a mother and not a father. I don't think you're telling us anything we haven't heard. And you're out of time. So thank you very much. Thank you. I would simply ask for that. Thank you. The case is submitted. The Court will take a brief recess. All rise. This Court is going to recess for approximately five minutes. The next case will be Saanen v. Ashcroft.
judges: Reinhardt, Noonan, Clifton